NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of the:

EVANDRO MASCI LIVING TRUST

VANCE MASCI and ELIZABETH MCALISTER, *Petitioners/Appellees*,

*v.*

GREGORY MASCI, *Respondent/Appellant*.

No. 1 CA-CV 15-0399
FILED 4-28-2016

Appeal from the Superior Court in Maricopa County
No. PB2014-002829
The Honorable Margaret LaBianca, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Watland & Allen PLLC, Phoenix
By Dwight O. Watland

And

Jaburg & Wilk PC, Phoenix
By Kathi M. Sandweiss
*Counsel for Petitioners/Appellees*

Curley & Allison LLP, Phoenix
By Roger D. Curley and Kiernan S. Curley
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge John C. Gemmill and Judge Margaret H. Downie joined.

---

**G O U L D**, Judge:

¶1        In July 1996, Evandro Masci ("Evandro") created the "Evandro Masci Living Trust" ("Trust"). Evandro was the trustor and sole trustee of the Trust. The Trust provided that upon Evandro's death, its assets were to be distributed in equal shares to his four children: Gregory Masci ("Gregory"), Vance Masci ("Vance"), Elizabeth Masci McAlister ("Elizabeth") and Sylvia Masci Turner ("Sylvia").

¶2        In September 2008, Evandro executed an amendment to the Trust appointing Gregory as co-trustee. Gregory and Evandro acted as co-trustees of the Trust until Evandro's death in November 2013. After Evandro's death, Gregory was the sole trustee.

¶3        In July 2014, Vance and Elizabeth ("Appellees") filed a petition[1] seeking, among other things, to remove Gregory as Trustee. Appellees based their removal claim on Article 12, section 2(b) of the Trust (the "removal clause"), which states:

> [a]fter my [Evandro's] death or disability, a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income under this agreement may remove any Trustee.

¶4        Based on the removal clause, Appellees filed a motion for summary judgment to remove Gregory as trustee. The court granted the motion. In its order, the court also appointed Vance as the successor trustee,

---

[1]        Only Vance and Elizabeth were parties to the petition; Sylvia was not a party.

and ordered Gregory to "proceed expeditiously to deliver the Trust property" to Vance.

**¶5** Gregory filed a motion for reconsideration, which the court denied. Gregory timely appealed.

## DISCUSSION

**¶6** Gregory argues the court erred in granting summary judgment because Appellees do not have the authority to remove him as trustee under the terms of the Trust. We disagree.

**¶7** A trial court may grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the grant of summary judgment de novo. *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011). In reviewing a trial court's grant of a motion for summary judgment, we view the facts "in the light most favorable to the party against whom summary judgment was entered." *Id.* Interpretation of a written instrument is a question of law we review de novo. *See Wilshire Ins. Co. v. S.A.*, 224 Ariz. 97, 99, ¶ 6 (App. 2010).

**¶8** A trust is interpreted according to its terms. *KAZ Constr., Inc. v. Newport Equity Partners*, 229 Ariz. 303, 305, ¶ 7 (App. 2012). When interpreting a trust, the goal is to ascertain the intent of the trustor as expressed in the document. *In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8 (App. 2008). Thus, a court must examine the trust document and consider the language contained within that document as a whole. *Id.*; *In re Gardiner's Estate*, 5 Ariz. App. 239, 240-41 (1967); *In re Estate of Pouser*, 193 Ariz. 574, 578, ¶ 10 (1999). Extrinsic evidence will be considered only when the terms of the trust are ambiguous. *Ziles*, 219 Ariz. at 530, ¶ 9; *see Pouser*, 193 Ariz. at 579, ¶ 10 (construing a will).

**¶9** Gregory argues that the Trust terminated upon Evandro's death, and therefore Appellees have no authority to enforce the removal clause. However, under Arizona law, a trust does not automatically terminate upon the death of the trustor. Ariz. Rev. Stat. ("A.R.S.") section 14-10410. Rather, "a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved or the purposes of the trust have become unlawful, contrary to public policy or impossible to achieve." *Id.*

**¶10** The terms of the Trust do not support Gregory's position. While it is true the Trust provides for a winding down process and the

distribution of its assets after Evandro's death, it also provides instructions for the administration of the Trust after Evandro's death. Thus, for example, the Trust includes a provision allowing the beneficiaries to change the situs, or location, of the Trust "[a]fter [Evandro's] death."

¶11　　　　Consistent with the overall language of the Trust, the removal clause did not terminate upon Evandro's death. The removal clause expressly states a "majority of the beneficiaries" may remove a trustee "[a]fter [Evandro's] death or disability." Thus, Appellees had the authority to remove Gregory as trustee after Evandro's death.

¶12　　　　Gregory next argues Appellees lacked authority to remove him as trustee because, under the terms of the removal clause, they were not "eligible" to receive "net income" or distributions until he had finished the process of "winding up" the Trust. Gregory also contends that until the "winding up" process is complete, he is unable to determine the exact amount of the Appellees' distributions, and therefore they are not eligible to receive any income distributions. We disagree.

¶13　　　　Appellees are beneficiaries under the Trust, and are entitled to receive income distributions under the Trust. Thus, whatever distributions they receive after the winding down process is complete, the fact remains they are "eligible," at some point, to receive net income under the Trust. *See* Article 9, §§ 1, 2 (describing how the "trust property" and "all undistributed net income and principal" shall be distributed to the Trust beneficiaries).

¶14　　　　Finally, Gregory argues that he is entitled to "retain reserves under A.R.S. § 14-10817 for debts, expenses, and taxes." However, A.R.S. § 14-10817 provides that a *trustee* may "retain a reasonable reserve for the payment of debts, expenses and taxes." Gregory is no longer the trustee, and he has no authority to retain trust assets under this statute. Rather, he has been ordered to turn over all of the trust assets to Vance, the successor trustee.[2]

---

[2]　　　　Under the court's judgment, Vance has all further responsibility for payment of debts, expenses and taxes of the Trust and, prior to termination, he must provide accountings and submit proposals for distribution, as required by A.R.S. § 14-10817. At that time, if Gregory has any objection, or believes he has paid any expenses for which he is entitled to reimbursement, he can submit his objection(s) to Vance.

**CONCLUSION**

¶15  For the reasons above, we affirm the trial court's judgment.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama